IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

PAUL R. GOUGH, )
 )
       Plaintiff, )
 )
vs. ) Case No.: CIV-14-1093-D
 )
LINCOLN COUNTY BOARD OF )
COUNTY COMMISSIONERS, )
 )
       Defendant. )

**O R D E R**

Before the Court are Defendant Board's Motion for Summary Judgment [Doc. No. 26], Plaintiff's Response in opposition [Doc. No. 31], and Defendant's Reply [Doc. No. 34].[1] The Motion is fully briefed and at issue.

**Background**

Plaintiff brings suit under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq*. ("ADA")[2] and the Oklahoma Anti-Discrimination Act, OKLA. STAT. tit. 25, § 1101 *et seq.* (2014) ("OADA"),[3] specifically section 1302, to recover damages for alleged discrimination. Additionally,

---

[1] Plaintiff's Sur-Reply [Doc. No. 38] was stricken by an October 13, 2015, Order of the Court [Doc. No. 41].

[2] *See* 110 P.L. 325, 122 Stat. 3553, 3559 §§ 1, 8.

[3] "[T]he protections provided by the OADA are 'co-extensive with the protections provided by federal law under the ADA.'" *Roberts v. Ind. Sch. Dist. No. 12, Edmond, Okla.*, 2014 WL 1347379, at *2 (W.D. Okla. 2014) (quoting *Hamilton v. Okla. City Univ.*, 911 F. Supp. 2d 1199, 1206 (W.D. Okla. 2012) (further citations omitted)). Thus, if Plaintiff's federal claim fails, so also must his state claim. *See id.*

Plaintiff brings a workers' compensation retaliation claim under OKLA. STAT. tit. 85, § 341 (2014).[4]

## Standard of Decision

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[5]

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477

---

[4] OKLA. STAT. tit. 85, § 341 was effectively repealed by the passage of Title 85A. *See* OKLA. STAT. tit. 85A (2014). However, Section 3 of the new act states that "[t]he Workers' Compensation Code in effect before the effective date of this act shall govern all rights in respect to claims for injuries and death based on accidents occurring before the effective date of this act." *Id.* § 3(C) (2014).

[5] *See also Conoco Inc. v. J.M. Huber Corp.*, 148 F. Supp. 2d 1157, 1164-65 ("If the nonmoving party bears the burden of proof, the movant need not 'support its motion with affidavits or other similar materials negating the opponent's' claims or defenses. Rather, the movant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of the nonmovant's claim." (quoting *Celotex*, 477 U.S. at 323) (further citations omitted)).

U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### Statement of Undisputed Facts[6]

On November 1, 2011, Plaintiff applied to Lincoln County, District 1 for the position of driver. Thereafter, Plaintiff interviewed with Don Sporleder ("Commissioner Sporleder") and Lincoln County, District 1 Road Foreman Carl Munson, and was subsequently hired. Although no written job description was provided,[7] Plaintiff was aware when he was hired that, as a driver, he would be responsible for preventative maintenance on his vehicle. Such maintenance included checking tire inflation; windshield wiper functionality; fuel, oil, and coolant levels; and lubrication of the truck, as well as assisting with other mechanical issues that arose. At some point after hiring, but no later than experiencing his first flat tire, Plaintiff became aware that he was also expected to assist a mechanic in changing tires on

---

[6] This statement includes material facts presented by Defendant that are properly supported and not opposed in the manner required by Rule 56. All facts are stated in the light most favorable to Plaintiff.

[7] Apparently, there has never been a written job description for a Lincoln County, District 1 driver.

3

his truck when needed – a somewhat common occurrence. Although it is physically possible for one person to change a flat tire, two people normally worked together to accomplish the task as the truck tires are larger than a normal vehicle's tires and weigh as much as 150 pounds.[8]

On March 28, 2013, while on the job, Plaintiff heard a pop in his lower back as he climbed off a loader truck. Plaintiff reported the incident to Commissioner Sporleder, and sought medical attention from a chiropractor the following Monday. Plaintiff was unable to return to work from that time on, and periodically updated Commissioner Sporleder via phone regarding his physician-monitored progress.

Having reached "MMT"[9] on October 28, 2013, Plaintiff was released from medical care. *See* Physician's Report on Release and Restrictions [Doc. No. 26-15]. His release contained one permanent restriction – "No lifting or changing semi-tire $\geq 75$ lbs." *Id.* Plaintiff notified Commissioner Sporleder of his release and restriction that same day, and again called Commissioner Sporleder on October 30, 2013. Having received no further communication from Commissioner Sporleder, Plaintiff applied for unemployment compensation on November 1, 2013. Commissioner Sporleder subsequently received a letter from the Oklahoma Employment Security Commission and responded on November 5, 2013,

---

[8] Changing a flat tire involves removing the flat tire from the vehicle, rolling it to the shop, manually breaking down the tire from the wheel rim, prying the tire off the rim, and lifting and flipping the tire over to repeat the process on the other side. After the tire is repaired, it, or a similar tire, must be reinstalled on the truck.

[9] "MMT" is the common abbreviation for "maximum medical improvement."

maintaining Plaintiff's continued employment. Approximately a week later, Plaintiff again called Commissioner Sporleder, and the two agreed to meet on November 12, 2013. At the scheduled meeting, Plaintiff was terminated due to Defendant's inability to meet Plaintiff's permanent restriction.[10] Neither Plaintiff nor Commissioner Sporleder discussed any reasonable accommodations that might have allowed Plaintiff to perform his job as a driver.

**Discussion**

**A.     ADA and OADA Discrimination Claims**

The parties agree on the essential elements of a *prima facie* case of disability discrimination. *See* Def. Mot. [Doc. No. 26] at 14; Pl. Resp. [Doc. No. 31] at 16. Those elements require that a Plaintiff: 1) is disabled within the meaning of the ADA, 42 U.S.C. § 12101 *et seq.*; 2) is qualified, with or without reasonable accommodation, to perform the essential functions of his job; and 3) was fired because of his disability. *See Hawkins v. Schwan's Home Serv.,* Inc., 778 F.3d 887, 883 (10th Cir. 2015); *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011).

**1.     Disability**

As defined by the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A).[11] A "major life activity" includes "lifting" and "the operation of a major bodily

---

[10] Defendant maintains that assisting in changing a flat tire is an essential job function of a driver and that there were no other job openings for which Plaintiff was qualified.

[11] This definition must "be construed in favor of broad coverage of individuals under this [Act], to
(continued...)

function." 42 U.S.C. § 12102(2)(A)-(B).[12] The Code of Federal Regulations defines a "physical or mental impairment" as "[a]ny . . . condition . . . affecting one or more body systems, such as . . . musculoskeletal . . . ." 29 C.F.R. § 1630.2(h)(2)(i)(1)(ii). "While an impairment need not prevent or even severely restrict an individual from performing a major life activity to be considered substantially limiting, 'not every impairment will constitute a disability. . . .'" *McKenzie-Nevolas v. Deaconess Holdings LLC*, No. CIV-12-570-D, 2014 WL 518086, at *2 (W.D. Okla. 2014), appeal dismissed (May 28, 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

In the present case, Plaintiff suffered a back injury and, after prolonged treatment, was released from medical care with a permanent restriction. The spine and other bones in his back are, of course, part of Plaintiff's musculoskeletal system. The permanent restriction of lifting no weight greater than seventy-five pounds falls into the category of "major life activity." *See* 29 C.F.R. § 1630.2(h)(2)(i)(1)(ii). Therefore, the first element is established and Plaintiff is a disabled person under the ADA.

## 2. Qualified, With or Without Reasonable Accommodation

An individual is "qualified" within the meaning of the ADA if: (1) the individual can perform the essential functions of his job; or (2) if the individual is unable to perform the

---

[11](...continued)
the maximum extent permitted by the terms of this [Act]." *Id.* § 12102(4)(A).

[12] Major life activities are now "defined to include the operation of major bodily functions, thus better addressing chronic impairments that can be substantially limiting." 29 C.F.R. § 1630(2)(i) (*quoting* 2008 Senate Statement of Managers at 8).

6

essential functions of his job, a reasonable accommodation by the employer would enable him to perform those functions. *See Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004). "[P]laintiff bears the burden of showing [he] is able to perform the essential functions of [his] job," with or without a reasonable accommodation. *Id.* at 1119 (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002)).

Although the ADA does not define "essential functions," it does state that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of essential functions of the job." 42 U.S.C. § 12111(8). Further, 29 C.F.R. § 1630.2 defines "essential functions" as any "fundamental job duties of the employment position the individual with a disability holds or desires." *Id.* § 1630.2(n)(1). The regulation identifies the following considerations:

    (i)    The employer's judgment as to which functions are essential;
    (ii)   Written job descriptions prepared before advertising or interviewing applicants for the job;
    (iii)  The amount of time spent on the job performing the function;
    (iv)  The consequences of not requiring the incumbent to perform the function;
    (v)   The terms of a collective bargaining agreement;
    (vi)  The work experience of past incumbents in the job; and/or
    (vii) The current work experience of incumbents in similar jobs.

*Id*. § 1630.2(n)(3). "Provided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it." *E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 986 (10th Cir. 2012) (quoting *Hennagir v. Utah Dept. Of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2009) (internal quotations omitted)).[13]

An employer discriminates on the basis of a disability if he fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee." 42 U.S.C. § 12112(b)(5)(A). However, such accommodation need not "'modify[] or eliminat[e] an essential function.'" *Hennagir*, 587 F.3d at 1264 (quoting *Mathews v. Denver Post*, 263 F.3d 1164, 1168-69 (10th Cir. 2001)).[14] Therefore, reassigning tasks that a disabled employee could not do by himself or eliminating assigned tasks from his job position fall outside the realm of reasonable accommodations.

In the present case, assisting in changing a flat tire on Plaintiff's work vehicle is the essential function at issue. Although Defendant does not provide drivers with a written description of their job duties, Defendant maintains that assisting in changing a flat tire is an essential function of the job. Plaintiff has routinely assisted in changing tires on his work vehicle. Thus, even if Plaintiff was unaware of this essential function at the time of his

---

[13] *See also Hennagir*, 587 F.3d at 1262 ("The ADA does not limit an employer's ability to establish or change the content, nature, or functions of a job." (internal quotation omitted)).

[14] *See also Picture People, Inc.*, 684 F.3d at 991 ("[I]t is unreasonable to expect [an e]mployer to reallocate specific job duties . . . in order to accommodate" an employee who is unable to perform essential functions of his job.).

hiring, he became aware of, and assented to it, as a result of the numerous times he performed the duty after taking the position with Defendant. Given his permanent restriction, however, it is not clear on the present record that Plaintiff could assist in changing a flat tire that weighed approximately 150 pounds. Plaintiff has failed to establish the existence of a material fact dispute for trial on this issue.

The record reflects that no reasonable accommodations were offered by Defendant, but neither did Plaintiff suggest any. Defendant is not required to remove the essential function in lieu of an accommodation, nor is Defendant obligated to place the burden of performing the essential function on another employee. Although, despite his restriction, "it was Plaintiff's understanding that he could still change semi tires with assistance," he failed to discuss such possibility with Defendant. Pl. Resp. [Doc. No. 31] at 8; *see also* Def. Mot. [Doc. No. 26] at 11. No evidence in the summary judgment record establishes the nature of a reasonable accommodation that would allow Plaintiff to perform such essential function, and the burden of producing such evidence rests with Plaintiff.[15] *Mason*, 357 F.3d at 1118.

---

[15] Both Plaintiff and Defendant acknowledge the existence of a dolly and hoist to assist in changing a flat tire. *See* Def. Mot. [Doc. No. 26] at 3; Gough Depo. [Doc. No. 30-1] at 163-64; Munson Depo. [Doc. No. 30-2] at 25-26. Plaintiff maintains that, with the help of the mechanic and the use of both the dolly and the hoist, "the need to lift the tire by himself was eliminated." Pl. Resp. [Doc. No. 30] at 4; *see also* Gough Depo. [Doc. No. 30-1] at 163-64. However, Plaintiff also maintains that prior to his injury, he "had always received help in changing flat tires and had always utilized the existing equipment in the shop." Pl. Resp. [Doc. No. 30] at 10. Even when taken in the light most favorable to Plaintiff, the facts are clear that there was still a need to lift the tire in some measure, and no evidence, other than Plaintiff's opinion, suggests that the additional person and equipment would allow Plaintiff to complete his essential job function while still honoring his restriction. *See* Def. Mot. [Doc. No 26] at 5; Munson Depo. [Doc. No. 26-3] at 59; Sporleder Depo. [Doc. No. 26-4] at 111.

It is obvious from the description of Plaintiff's job duties as well as the nature of his position that an essential function of Plaintiff's position was assisting in changing flat tires on his work vehicle. Because of Plaintiff's restriction, which clearly prohibits lifting or changing tires over seventy-five pounds, and Plaintiff's failure to submit proof that he was qualified to perform the essential functions of his position with or without reasonable accommodations, there is no genuine issue of material fact regarding whether Plaintiff was qualified for his position within the meaning of the ADA. Therefore, the Court concludes on the present record that Defendant is entitled to summary judgment on both the ADA and OADA discrimination claims.

**B.     Retaliatory Discharge Claim**

Plaintiff claims the protection of an Oklahoma workers' compensation statute, which prohibits the retaliatory discharge of an employee for filing a workers' compensation claim or retaining a lawyer for representation regarding the same. *See* OKLA. STAT. tit. 85, § 5(A).[16] The elements of a *prima facie* case for retaliation include: "[(1)] employment, [(2)] on the job injury, [(3)] receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted . . . proceedings under the Act, and [(4)] *consequent* termination of employment." *Buckner v. Gen. Motors Corp.*, 760 P.2d 803, 806 (Okla. 1988) (emphasis in original).

---

[16] Legislative amendments in 2011 repealed these statutes but reenacted them in section 341. *See* Okla. Stat. tit. 5, §§ 5-7, 341 (West 2012).

It is undisputed that Plaintiff was employed by Defendant, and suffered an on the job injury.[17] Plaintiff received treatment under circumstances which put Defendant on notice that Plaintiff was being treated for the work-related injury. Plaintiff subsequently obtained an attorney and pursued a workers' compensation claim. Although Plaintiff maintains Defendant retaliated against him for exercising his statutory rights to workers' compensation, he has failed to meet his burden of "produc[ing] evidence sufficient to support a legal inference that the termination was 'significantly motivated' by retaliation." *Blackwell v. Shelter Mut. Ins. Co.*, 109 F.3d 1550, 1554 (10th Cir. 1997) (citing *Wallace v. Halliburton Co.*, 850 P.2d 1056, 1058 (Okla. 1993)).[18] Therefore, the Court concludes on the present record that Defendant is entitled to summary judgment on the retaliation claim.

---

[17] Although Defendant questions the legitimacy of this fact (*see* Mot. [Doc. No. 26] at 28), Plaintiff's workers' compensation case has already been litigated and the existence of an injury was established. *See Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004) ("[I]ssue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim.") (citing *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) ("When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.") (further citations omitted).

[18] In support of his claim, Plaintiff has stated that Patricia Swann was instructed not to speak to him via telephone because he was represented by counsel, that he was the only employee of Defendant who retained legal counsel for a workers' compensation case after being injured on the job, and that he was also the only employee who was terminated after being released to return to work. *See* Pl. Resp. [Doc. No. 31] at 6, 27. These statements, even when taken in the light most favorable to Plaintiff, fall well short of showing that his termination was "significantly motivated" by retaliation.

**Conclusion**

In light of the foregoing, Defendant's Motion for Summary Judgment [Doc. No. 26] is hereby GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 13th day of January, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE